# Exhibit "A"

[jiffyord] [Bench Order +]

ORDERED.

Dated:  January 19, 2021

*[signature: Catherine M. McEwen]*

Catherine Peek McEwen
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                    Case No.
                                                          8:12−bk−08821−CPM
                                                          Chapter 11

Howard Avenue Station, LLC

_____   Debtor*   _____/

**ORDER DENYING MOTION TO AMEND "ORDER ON MOTION FOR CLARIFICATIONS:
SUPPLEMENTING ORDERS AT DOCKET NOS. 1111 AND 1115" (DOC. 1204) ENTERED ON
NOVEMBER 10, 2020**

THIS CASE came on for hearing on  January 19, 2021 , for consideration of the **Motion to
Amend "Order on Motion for Clarifications: Supplementing Orders at Docket Nos. 1111
and 1115" (Doc. 1204) entered on November 10, 2020** (Doc. 1230 ), filed by **Debtor
Howard Avenue Station, LLC** .

For the reasons stated orally and recorded in open court, the Motion to Amend "Order on
Motion for Clarifications: Supplementing Orders at Docket Nos. 1111 and 1115" (Doc. 1204)
entered on November 10, 2020 is Denied .

The Court in its discretion may file written findings of facts and conclusions of law at a
later date.

Service Instructions:

The Clerk's office is directed to serve a copy of this order on interested non–CM/ECF users.

Approved for entry.

*All references to "Debtor" shall include and refer to both of the debtors in a case filed jointly by two individuals.

# Exhibit "B"

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

Howard Avenue Station, LLC                    Case No.: 8:12-bk-08821-CPM
                                              Chapter 11

_____Debtor._____/

**MOTION TO AMEND "ORDER ON MOTION**
**FOR CLARIFICATION: SUPPLEMENTING ORDERS AT DOCKET**
**NOS. 1111 AND 1115" (DOC. 1204) ENTERED ON NOVEMBER 10, 2020**

W. Bart Meacham, special counsel for the Debtor, hereby files this *Motion to Amend*

*"Order on Motion for Clarification: Supplementing Orders at Docket Nos. 1111 and 1115"*

*(Doc. 1204) Entered on November 10, 2020* ("*Motion to Amend Order*"), and in support hereof

states as follows:

1.      On September 4, 2020 the undersigned, as special counsel for the Debtor, filed a

*Motion for Clarification as to (I) Order Approving Debtor's Application to Employ W. Bart*

*Meacham as Special Counsel (Doc. 1115), and (II) Order Granting Ore Tenus Motion for Stay*

*Relief (Doc. 1111)*, requesting clarification as to the scope of state court litigation between the

Debtor and Frank Kane and the issues to be litigated therein ("*Motion for Clarification*" or "*Doc.*

*1150*").

2.      The parties appeared before this Court on September 17, 2020 for a hearing on the

*Motion for Clarification*, with the Court granting, at least in part, the *Motion for Clarification*.

3.      Because the Debtor's undersigned special counsel and Mr. Kane's counsel were

unable to agree on an *Order* from the September 17, 2020 hearing, the Court directed counsel to

appear for a further or additional hearing on November 6, 2020. During that hearing, the Court advised that it was using the proposed *Order* that Mr. Kane's counsel submitted, except that the following additional language would be added to the end of paragraphs of such proposed *Order* so that the parties' authorization to litigate in state court is limited to "those issues that are directly related to Florida Statute Section 83.201 and whether the Cheap Building was wholly untenantable". *See* page 7, line 17, to page 8, line 1 of the November 6, 2020 hearing transcript, attached hereto as Exhibit "A".

4.      However, on November 10, 2020 the Court entered an *Order on Motion for Clarification: Supplementing Orders at Docket Nos. 1111 and 1115* (Doc. 1204) that does not include such language.

5.      In addition, although such *Order* (Doc. 1204) states that it is entered "[f]or the reasons stated orally and recorded in open court that shall constitute the decision of the Court", the hearing date of November 6, 2020 is not in the *Order* (Doc. 1204).

6.      Because the parties appeared before this Court on November 6, 2020 for a further or additional hearing on the *Motion for Clarification*, and because the Court did rule and clarify at such hearing that language should be added to the proposed *Order* submitted by Mr. Kane's counsel so that the parties' authorization to litigate in state court is limited to "those issues that are directly related to Florida Statute Section 83.201 and whether the Cheap Building was wholly untenantable", the Debtor is requesting that this Court amend the *Order* (Doc. 1204) so that such language, and the hearing date of November 6, 2020, are included in an *Amended Order*, in accordance with (i) Federal Rule of Civil Procedure 59 and Federal Rule of Bankruptcy

Procedure 9023, and/or (ii) Federal Rule of Civil Procedure 60 and Federal Rule of Bankruptcy Procedure 9024.

7.      Because Mr. Kane has raised issues (i) in his affirmative defenses that are not directly related to Florida Statute Section 83.201 and whether the Cheap Building was wholly untenantable, and (ii) in his Counterclaim that, although not related to his purported damages, are, nevertheless, not directly related to Florida Statute Section 83.201 and whether the Cheap Building was wholly untenantable, the Debtor believes that the amendments to the *Order* (Doc. 1204) requested herein are necessary so that this Court's intent and authorization, as to the state court litigation, is carried out and not exceeded.

8.      The undersigned reached out to Mr. Kane's counsel on November 27, 2020 to find out whether he consents or objects to the relief sought herein.  As of the filing of this *Motion to Amend Order*, Mr. Kane's counsel has not responded.  As a result, the undersigned does not know the position of Mr. Kane as to the relief sought herein.

WHEREFORE, the Debtor, Howard Avenue Station, LLC, respectfully requests for this Honorable Court to grant this *Motion to Amend Order* and enter an *Amended Order*, as to the *Order on Motion for Clarification: Supplementing Orders at Docket Nos. 1111 and 1115* (Doc. 1204) entered on November 10, 2020, (i) that provides that the parties' authorization to litigate in state court is limited to "those issues that are directly related to Florida Statute Section 83.201 and whether the Cheap Building was wholly untenantable", (ii) that includes the hearing date of November 6, 2020, and (iii) that provides for any other and further relief that is just and appropriate.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on December 2, 2020, I electronically filed this *Motion to Amend Order* with the Clerk of Court via CM/ECF, which will send notice of electronic filing to counsel or parties registered to receive electronic filings in this case.

IT IS FURTHER CERTIFIED that, on December 2, 2020, I have mailed or hand delivered this *Motion to Amend Order* to interested parties that do not receive notice of electronic filing via CM/ECF.


 /s W. Bart Meacham                                      
W. Bart Meacham, Esquire
Florida Bar No.  0043000
308 E. Plymouth St.
Tampa, FL 33603-5957
(813) 223-6334
(813) 425-6969
Email: wbartmeacham@yahoo.com
Special Counsel for Debtor, Howard
Avenue Station, LLC

4

# Exhibit "A"

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
- - - - - - - - - - - - - - - x
IN RE:                         :
HOWARD AVENUE STATION, LLC     :  Case No. 8:12-bk-08821-CPM
            Debtor             :  Chapter 11
- - - - - - - - - - - - - - - x
HOWARD AVENUE STATION, LLC     :
            Plaintiff          :
vs.                            :  Adversary 8:14-ap-1070-CPM
FRANK KANE, et al              :
            Defendants         :
- - - - - - - - - - - - - - - x
```

U.S. Courthouse
801 N. Florida Avenue
Tampa, Florida
November 6, 2020


### TRANSCRIPT OF HEARING (Entire Hearing)


**8:14-ap-1070:**  1-Motion to Dismiss and for Abstention in
Response to Thomas Ortiz's (I) Motion to Dismiss and/or
Strike Frank R. Kane's Second Amended Proof of Claim 2-2
Filed January 4, 2019, (II) Answer to Second Amended POC,
(III) Affirmative Defenses to Second Amended POC, (IV)
Incorporation of Other Papers, Answers, Affirmative
Defenses, Counterclaims, Etc., and (VI) Demand for Jury
Trial Filed by Eric D. Jacobs on behalf of Defendant
Frank Kane, 3rd Party Plaintiff Frank Kane
(Doc. #975)(Related Doc. #963).....
*[FULL NATURE OF PROCEEDINGS CONTINUED ON NEXT PAGE]*


### BEFORE THE HONORABLE CATHERINE PEEK MCEWEN
### UNITED STATES BANKRUPTCY JUDGE


PROCEEDINGS DIGITALLY RECORDED BY COURT PERSONNEL
FROM IN-PERSON, ZOOM VIDEOCONFERENCE, AND/OR COURTCALL TRANSMISSIONS.
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE
APPROVED BY ADMINISTRATIVE OFFICE OF U.S. COURTS.

---

### JOHNSON TRANSCRIPTION SERVICE
6532 Thoroughbred Loop
Odessa, Florida 33556
(813) 920-1466

**TRANSCRIPT OF HEARING**
(continued)

*[FULL NATURE OF PROCEEDINGS CONTINUED FROM PRECEDING PAGE]*

**8:14-ap-1070 Con't:** .....2-Motion to (I) Dismiss and/or Strike Frank R. Kane's Second Amended Proof of Claim 2-2 filed January 4, 2019, (II) Answer to Second Amended POC with Reservation of Rights, (III) Affirmative Defenses to Second Amended POC with Reservation of Rights, (IV) Incorporation of Other Papers, Answers, Affirmative Defenses, Counterclaims, Etc. With Reservation of Rights, (V) Counterclaims to Second Amended POC with Reservation of Rights, and (VI) Demand for Jury Trial with Reservation of Rights Filed by 3rd Party Defendant Thomas Ortiz (Doc. #978)(Related Doc. #976)

**A P P E A R A N C E S**
(BY ZOOM AND COURTCALL)


For Frank Kane:               ERIC D. JACOBS, Esquire
                              Genovese, Joblove & Battista
                              100 N. Tampa Street, Suite 1645
                              Tampa, Florida 33602
                              (813) 439-3100
                              ejacobs@gjb-law.com


For Intervenor-Defendant     W. BART MEACHAM, Esquire
William B. Meacham:          308 E. Plymouth St.
                             Tampa, Florida 33603-5957
                             813-223-6334
                             wbartmeacham@yahoo.com


For Tommy Ortiz:             THOMAS ORTIZ, Pro Se
                             303 South Melville Avenue
                             Tampa, Florida 33606
                             (813) 714-8085
                             TommyO@thehydeparkcafe.com

**P R O C E E D I N G S**

1
2          (Entire Proceedings commenced at 9:43 a.m.)

3          COURTROOM DEPUTY:  Court is now in session.

4    Howard Avenue Station, LLC, 12-8821, Adversary 14-1070.

5          THE COURT:  All right.  I'll take appearances of

6    those who are on Zoom.  I see Eric Jacobs.  I'll take your

7    appearance.

8          MR. JACOBS:  Good morning, Your Honor.  Eric

9    Jacobs on behalf of Frank Kane.

10          THE COURT:  All right.  It appears there are two

11    phone appearances.  Do you know who they are, Ms. Martin?

12          COURTROOM DEPUTY:  Bart Meacham.

13          THE COURT:  Go ahead, Mr. Meacham.

14          MR. MEACHAM:  Good morning, Your Honor.  This is

15    attorney Bart Meacham.

16          COURTROOM DEPUTY:  And Tommy Ortiz.

17          MR. ORTIZ:  Good morning, Your Honor.  Tommy

18    Ortiz.

19          THE COURT:  And where is Ms. DeGrave?

20          MR. JACOBS:  Your Honor, she was not available

21    today.  That's why she filed a Motion to Continue the Status

22    Conference, which was granted.

23          THE COURT:  Okay.  And she's probably not here

24    because the advertised contested matter has to do with

25    something between Mr. Ortiz individually and Frank Kane.

1          And then I know Mr. Meacham is on because I'm

2     going to try to resolve this conflict, which I'm amazed

3     every time that little simple hearings that just say you can

4     proceed on Count I and the counterclaim to Count I have to

5     be subject to a disputed form of order.  It's just amazing.

6          We took a stab at simplifying things, and I think

7     my law clerk sent the proposed order, as through my eyes, to

8     Mr. Meacham, Mr. Jacobs, and Mr. Ortiz yesterday.  Is there

9     anything that I overlooked or missed in this proposed order

10    that would resolve the motion at Docket No. 1150?  Mr.

11    Ortiz, anything?

12          MR. ORTIZ:  Your Honor, I apologize, I didn't see

13    that come through on my end, but I was not -- I was letting

14    Mr. Jacobs and Mr. Meacham really handle the order, so I

15    wasn't really involved with that.

16          THE COURT:  Okay.  Mr. Meacham, any problem?

17          MR. MEACHAM:  Yes, Your Honor.  I had sent an

18    email to the Court, actually to Ms. Martin, with the

19    transcript and my proposed order in dark format and Mr.

20    Jacobs' proposed order.

21          And I had directed basically designations to the

22    transcript as to why I thought certain things should be

23    there.  For instance, I know at the hearing Mr. Jacobs said

24    that he'd got certain things in his counts that were in

25    there just to preserve his rights.  I would say, you know,

1  just not exactly in those words but -- and he has damages.

2          That he thinks he has damages, for instance, in

3  Count I, and so I don't think it's okay for the order to

4  just say that he can proceed on Count I when he's said he's

5  not seeking damages.  So I'd sent in an order that is quite

6  different with pages and line numbers and says that we can

7  proceed on his Count I and my Count I but only on those

8  issues that are directly related to Florida Statute

9  83.201 --

10          THE COURT:  Hold on.

11          MR. MEACHAM:  -- and whether the building is

12  wholly in tandem --

13          THE COURT:  Okay, hold on.  Hold on.

14          MR. MEACHAM:  Sorry.

15          THE COURT:  Where would you scriven that in the

16  proposed order that I circulated?  Would it be in decretal 2

17  and say at the end:  Comma, "but only as to," -- say it

18  again.

19          MR. MEACHAM:  "But only as to those issues as

20  framed by Count I of the Complaint and Kane's Affirmative

21  Defenses to Count I -- Count I of Kane's counterclaim and

22  the Answer and Affirmative Defenses to Count I of Kane's

23  counterclaim that are directly related to Florida Statutes

24  Section 83.201 and whether the Florida Avenue Building is

25  wholly untenantable or not."

1          THE COURT:  All right, hold on.  Now, I'm going to

2    repeat.  Can I call it the Cheap Building?

3          MR. MEACHAM:  That's fine with me, Your Honor.

4    Yes, Howard Avenue Building, the Cheap Building, however you

5    want to do it.

6          THE COURT:  And it was wholly untenantable as of

7    what date?

8          MR. MEACHAM:  It's my understanding that there was

9    -- an emergency motion was filed by the Debtor on a certain

10   day, that would have been May of 2019, and then an order

11   granting that came about.  And then there were several

12   orders that came from that.

13          But it's my understanding that it's when the

14   83.201 letter was sent out so -- that's attached to the

15   Complaint; I can pull that out, but I think it's in April of

16   2019.

17          THE COURT:  Well, that's the issue.  Was it wholly

18   untenantable on that date.  So this is how I would scriven

19   the decretal of the proposed order that we circulated last

20   night.

21          I would keep everything in place as-is because it

22   already talks about Count I of the Complaint, Count I of the

23   counterclaim and Affirmative Defenses.  And at the end of

24   that, I would say, "comma, but only as to those issues that

25   are directly related to Florida Statute Section 83.201 and

1   whether the Cheap Building was wholly untenantable as of" --

2   and then that's the blank I need filled in.

3           MR. MEACHAM:  I think it's May 2019, I believe is

4   when the notice was sent, or expired.

5           THE COURT:  May what?

6           MR. MEACHAM:  May --

7           MR. JACOBS:  Your Honor, if I may?

8           THE COURT:  Yes, go ahead.

9           MR. JACOBS:  The issue isn't whether or not it was

10  wholly untenantable on that date.  The issue is whether it

11  ever became tenantable at some point in the future that rent

12  would be due.

13          So I think putting Mr. Meacham --

14          THE COURT:  No.  I remember using the phrase

15  "wholly untenantable" as being an issue.

16          MR. JACOBS:  Your Honor, yes.  The original issue

17  was whether or not it was wholly untenantable.

18          THE COURT:  I need to know what date --

19          MR. JACOBS:  Mr. Kane --

20          THE COURT:  -- that was.

21          MR. MEACHAM:  May 7th.  sorry.

22          MR. JACOBS:  Mr. Kane did not dispute that it was

23  wholly untenantable in May when the City first shut it down.

24  The question arose in October whether it became tenantable.

25  And that's when Your Honor said:  I'm not touching that --

1          THE COURT:  Okay.

2          MR. JACOBS:  -- go back to State court.

3          THE COURT:  Okay.  I'm not even thinking that I

4    know what happened in this case, then.  Because I remember

5    that I did not want to try whether or not it was

6    untenantable as of a particular date.  And I said take --

7          MR. JACOBS:  Correct.  That was October.

8          THE COURT:  I said:  Take that outside and take

9    all your damage claims that flow from that outside of here.

10          MR. JACOBS:  Correct.

11          THE COURT:  I never -- listen, I never

12    contemplated that we would be talking about whether it ever

13    became tenantable because obviously it could become

14    tenantable at some point.

15          MR. JACOBS:  That was the -- so, Your Honor, I

16    filed a motion requesting a status conference that stated

17    that the City had cleared the violations and that rent

18    should start going again, or should start being paid again.

19          Mr. Ortiz and Ms. DeGrave objected to that, and

20    that's when Your Honor said:  I'm not deciding this, take it

21    to State Court.

22          THE COURT:  I thought that the wholly untenantable

23    issue was intrical -- or excuse me, was integral to the

24    applicability of 83.201.  Am I wrong?

25          MR. JACOBS:  83.201 is integral with wholly

1    untenantable, but the issue is not whether the building ever

2    was wholly untenantable.  It's whether it has ceased being

3    wholly untenantable so that rent --

4             THE COURT:  Okay, then I'm not -- then I came in

5    here with a misimpression.  I'm going to have to start

6    reading transcripts.  Maybe damages flow from a point where

7    it becomes untenantable, but I think at some point -- I

8    thought that the rights of the parties jelled under 83.201

9    and rose and fell on whether the building was wholly

10   untenantable.

11            MR. JACOBS:  It's when it stops being -- there's

12   two different things, Your Honor.  There's the determination

13   of when it became whole again, and that is essentially

14   Howard Avenue Station's Count I declaratory relief.

15            And then step two is Mr. Kane's claim, is when the

16   building became untenable in May of 2019, and Howard Avenue

17   Station refused to agree to (audio cut out) repairs, the

18   lease terminated.

19            And the only damages at issue -- my counterclaim,

20   as we discussed in this last hearing, is attorney's fees

21   related to the declaratory relief action.

22            And so my recollection was, Your Honor said:  Go

23   forward on Count I for the Debtor's dec. relief and go

24   forward on Kane's counterclaim for dec. relief, knowing that

25   the damages were limited to attorney fees.  And then we can

1  -- if we win, seek attorney fees but don't elect or do

2  anything else until we come back to you.

3        So all this order needs to add is, you know, to

4  the extent Kane is the prevailing party, he can proceed

5  through liquidation of attorney's fees and no further.

6        The remaining damages issues are abated because

7  the facts related to those issues all tie into issues that

8  are being determined by this Court/the District Court.

9        THE COURT:  Then I need to brush up on the

10  history.  You know, it's hard for me to keep every part --

11  and there are many in this case over eight years.  But I

12  thought that there was a disagreement on Kane's part that

13  the tenant may withhold rent in the first place.

14        MR. JACOBS:  There was a disagreement regarding

15  the adequate protection when we came here in May.  Your

16  Honor ruled that the building -- while the building was

17  untenantable, they did not have to pay rent, they could

18  withhold it.

19        The issue Your Honor has ruled on is what happens

20  when the building becomes tenantable, do they have to pay

21  that withheld rent?  You've ruled that they did.  There was

22  a couple back and forth reconsideration and clarification

23  motions where you still maintain that they have to pay that

24  rent once it becomes tenantable.  And then that issue was --

25  is the subject of a Notice of Appeal by Mr. Ortiz.

1          THE COURT:  Okay.  The statute I'm looking at,

2     it says:  Once the landlord has completed the repair or

3     maintenance, the tenant shall pay the landlord the amounts

4     of rent withheld.  Okay.

5          The repair -- has the repair been completed or is

6     that the subject of the two dueling Count I's in the State

7     Court?

8          MR. JACOBS:  That is the subject of just the

9     Count I of Howard Avenue Station and Mr. Ortiz.

10         THE COURT:  Okay.  All right, then I don't need to

11    put a date on it.  Let me say this then.  Let me say:  But

12    only as to those issues that are directly related to Florida

13    Statute Section 83.201 and whether the Cheap Building --

14         MR. JACOBS:  It was ordered --

15         THE COURT:  When the Cheap building became wholly

16    untenantable and whether it is now tenantable -- and when it

17    became tenantable, if ever.

18         MR. JACOBS:  That's fine.

19         THE COURT:  Does that do it for you, Mr. Meacham?

20         MR. MEACHAM:  Well, Your Honor, if I may, there is

21    -- because I've looked at all the orders, and I had also in

22    my proposed order, I kind of went through the orders, and I

23    saw where the first order granting the emergency motion to

24    abate rent.  You've got to have that language in there, like

25    Mr. Jacobs said, that once it becomes tenantable, all the

1    rent is due and payable.

2         But the problem is, is then there's a Motion for

3    Rehearing filed by Mr. Ortiz that the Court denied, but then

4    cited the language in the statute that says at the bottom

5    that basically that it doesn't prevent the tenant from

6    seeking any other relief that it's entitled to.

7         So I disagree with what Mr. Jacobs is saying, that

8    the Court's already determined that once it's tenantable,

9    then the Debtor would have to come up with hundreds of

10   thousands of dollars in rent.  But, you know, that's why,

11   then, I had a Count II for declaratory relief --

12        THE COURT:  Well, time out.

13        MR. MEACHAM:  -- where I was --

14        THE COURT:  Time out.  Mr. Meacham, I've already

15   ruled there is no offset.  If there are damages, they may be

16   pursued but not offset.  That's because the --

17        MR. MEACHAM:  Right, and --

18        THE COURT:  That's because the lease says that.

19   So, yes, hundreds and thousands of dollars will be due and

20   payable once it becomes tenantable, and that is without

21   prejudice to the Debtor to pursue whatever claims that

22   83.201 preserves, because at the end of 83.201, it says:

23   This section is cumulative to other existing remedies and

24   this section does not prevent any tenant from exercising his

25   or her other remedies, whatever those may be.

1          MR. MEACHAM:  Your Honor, I'm not trying to do an

2    offset saying that at all.  All I'm saying is that under the

3    provisions in the lease, rent's not owed.  It says that if

4    we're not getting -- if you flip this sentence around, if

5    we're not entitled -- if we don't get quiet enjoyment, we

6    don't owe rent.  So I'm not trying to offset it.  That's all

7    -- that's all I'm saying, okay?

8          It's not an offset, it's not trying to say you owe

9    us damages for this.  That was my count to Mr. Jacobs that

10   already filed an Answer to Count II.  There was never a

11   Motion to Strike my Count II.  It's also for Declaratory

12   Relief.  So I'm not trying to offset at all.

13         THE COURT:  Well, listen, I --

14         MR. MEACHAM:  All I'm saying is that -- yeah.

15         THE COURT:  Mr. Meacham, I think I also made a

16   ruling about whether the lease is silent on the procedure to

17   be followed when those things happen.  That's the first

18   sentence of 83.201.  I really do not want to revisit --

19         MR. MEACHAM:  Right.

20         THE COURT:  -- every sentence that has come out of

21   my mouth.  Please.  I'm trying to do a simple order that

22   says what you, Mr. Meacham, are allowed to do in State

23   Court, what you, Mr. Meacham, are employed to do, or

24   approved to be employed to do by this estate, and that's it.

25         I don't want to argue about the merits, please.

1   All I said was:  Do Count I of the Complaint, Do Count I of

2   the counterclaim.  You're permitted to do that, and stay

3   relief is permitted to do that.  And all you have raised

4   today is:  It's not all of the counterclaim.  It's just

5   everything but damages.

6             Maybe I should put that.

7             MR. JACOBS:  That's fine.

8             THE COURT:  I should say:  Except for any

9   determination of damages under the counterclaim and

10  Affirmative Defenses.  Will that do it, Mr. Meacham?

11            MR. MEACHAM:  Yes, Your Honor.  But I just want to

12  clarify that -- and I apologize too, and I brought myself up

13  to speed on all the orders that the Court found there's no

14  procedure which -- and I'm talking about a substantive

15  right, that's all.  I wasn't talking about a procedure of

16  whether or not rent is owed, and if we're not entitled to

17  possession or not.

18            And I haven't seen where the Court's determined

19  that and if the Court doesn't want to determine that.  And

20  so, again, that's just the only other declaratory relief, is

21  that whether or not rent is owed if we don't have

22  possession.  It's not about whether there's a procedure or

23  not.  And so --

24            THE COURT:  Okay, but can --

25            MR. MEACHAM:  And as for my Count II, Mr. Jacobs

 1  had actually, Your Honor --

 2          THE COURT:  Okay, can we not --

 3          MR. MEACHAM:  -- already answered that if there is

 4  no --

 5          THE COURT:  Okay, Mr. Meacham, Mr. Meacham.  Stop.

 6          MR. MEACHAM:  Yes.

 7          THE COURT:  Can we not include your legal

 8  arguments as part of my order.  Make your arguments in State

 9  Court.  All you asked was, may I be employed to do extra

10  things?  I said yes.

11          Is there stay relief to do extra things back on

12  Kane's part?  I said yes.

13          What is so hard about putting that in an order?

14          MR. MEACHAM:  Your Honor, actually my motion was

15  because Mr. Jacobs had all the stuff in there about the

16  Court's orders and he was going to be asking the State Court

17  to interpret the Court's orders.  And so I thought he went

18  too far and the Court agreed.  By asking for damages, which

19  is in Count I, Mr. Jacobs had said he's not proceeding under

20  the damages, so I clarified that.

21          There was no issue as to my Count II.  Mr. Jacobs

22  didn't file a motion to strike it.  And, again, I'm fine

23  with the language if the Court has agreed with it.  It's

24  limited.  His Count I, my client's Count I is limited to the

25  issues related to 83.201.  That's fine.  And, you know, I

1  wish I had some other language in there.  The email, I sent

2  the Court --

3           THE COURT:  I don't have it, I'm sorry.  Ms.

4  Martin, do you have an email from him?

5           COURTROOM DEPUTY:  I do.

6           THE COURT:  This morning?

7           COURTROOM DEPUTY:  Not this morning.  The last one

8  that I --

9           MR. MEACHAM:  It's October 27th.

10          THE COURT:  Okay.  Well, since October 27th, we

11 looked at the transcripts -- or listened to the -- excuse

12 me, listened to the hearing.  We've read both orders.  We're

13 trying to simplify it, and you all want to put extra stuff

14 in.

15          And, yes, did I envision that the State Court

16 Complaint would have more stuff in it than just the Dec.

17 action?  No, I did not.

18          Did I rule that for efficiency sake?  It does make

19 sense for people if they are going to include it, to be able

20 to plead all compulsory counterclaims?  Yes, I did, in

21 retrospect, okay?  But as far as what goes forward, I'm

22 limiting that.

23          And so, I think at the last hearing, I said it

24 makes sense for efficiency for you to load up the pleadings

25 with whatever is required but not litigate them.  And the

1  only things to be litigated are Count I of the Complaint and

2  Count I of the counterclaim.

3         And I approved Mr. Meacham's employment or

4  expanded it, supplement my prior order, with allowing him to

5  do that.  And on top of that, I make it clear that the stay

6  is modified to permit the litigation of both of those

7  pleadings or subsets of pleadings.  So I don't think we need

8  anything more than that.

9         So now I've resolved this.  If you disagree,

10 either of you or any of the three of you, this is the order

11 I'm entering.  It's the one that was circulated last night,

12 with the exception that at the end of Decretal No. 2, I'm

13 going to say "except for any determination of damages sought

14 in the counterclaim."  And I might even just put in

15 parentheses "attorneys' fees".

16        Okay, so we got that done.

17        MR. MEACHAM:  Your Honor?   Just one question,

18 Your Honor.

19        THE COURT:  What?

20        MR. MEACHAM:  The end of -- I apologize, but the

21 end of Florida Statute, as the Court said, 83.201 has that

22 language about it doesn't limit other rights or what have

23 you, and we are litigating 83.201.  And Mr. Jacobs has made

24 clear, and he could say that I'm wrong about this, but he's

25 made clear that he's going to try to get the court -- the

1  State Court -- to say that we owe rents, okay?

2          And I'm saying under 83.201 and the language in

3  the lease agreement that we don't owe rent because we

4  couldn't use the property.  And that's the only issue that I

5  -- that's the only issue I have at this point, is that he's

6  trying to say we owe rent and get the Court to say we owe,

7  is that language at the end of 83.201.  I'm saying that we

8  don't owe rent under the specific language of the lease

9  agreement.  And I haven't seen to where that has ever been

10  litigated.

11          MR. JACOBS:  Your Honor, if I may respond.

12          THE COURT:  Yes.

13          MR. JACOBS:  I am not asking the State Court to

14  determine whether or not they owe rent.  It is my position

15  that this Court has already ruled that they owe rent once

16  the tenantability issue has been determined.

17          Mr. Meacham is trying to argue a breach of the

18  client enjoyment provision somehow overdoes your current

19  ruling.  And if he wants to eventually litigate that in

20  State Court or if Your Honor disagrees with your prior

21  ruling once we determine the untenantable issue, we can deal

22  with that.  But at no time have I asked or plan to ask the

23  State Court to determine something already determined.

24          MR. MEACHAM:  Your Honor, if that's in the order,

25  then that's fine.  If that's additional language that he's

1  not asking, we're not litigating that that is in the order,

2  then I'm fine.

3            THE COURT:  I don't have any --

4            MR. JACOBS:  It's not in my pleading.

5            THE COURT:  I don't have any extra language in the

6  order except for what I just announced.  I'm adding at the

7  end of decretal 2, "except for any determination of damages

8  (attorneys' fees) sought in the counterclaim."

9            MR. MEACHAM:  Okay, Your Honor, that's fine.  I

10  mean, the transcript of today makes that clear.  That's

11  fine, Your Honor.

12            THE COURT:  Okay.  We'll get that one entered.

13            Other housekeeping.  Mr. Ortiz filed a Motion to

14  Dismiss and Strike an Answer at No. 963.  We denied it, I

15  think, the next day based on lack of an original signature.

16  He then filed a standalone signature, meaning a caption page

17  and a signature page, but that motion had been denied.

18            So we're striking the signature page as being

19  irrelevant because it's sort of -- it's just a random paper

20  that's in the chain of the docket.

21            The order denying the motion for failure to

22  include an original signature gave leave for the pleader --

23  the movant, excuse me, Mr. Ortiz, to file an amended

24  complete motion.

25            It appears that Mr. Ortiz did that subsequently,

1   although I'm not sure it's denominated as an amended motion,

2   but it's certainly a second and largely duplicate, if not

3   word-for-word, iteration of 963.  And that's -- I'm

4   referring to No. 978.

5           978 was filed after Frank Kane's Motion to Dismiss

6   or for Abstention of the original iteration in 963 but Frank

7   Kane's paper makes it clear that he intends this to be his

8   response to any corrected or amended motion.

9           So let me step back and I would like to set the

10  table with a few things.  I'm going to ask somebody to read

11  for the record the transcript docket number and the pages

12  where Mr. Ortiz agreed to litigate as Defendant the claims

13  that Kane has brought against the Debtor to the extent that

14  those claims could extend to Mr. Ortiz individually.

15          Let's start there and let me read those so I can

16  get some clarity because Mr. Ortiz is complaining about

17  somehow being drug into something unwillingly, and that's

18  not my recollection.

19          The next thing I will turn to is I will talk

20  generally about proofs of claim and claims that are

21  allowable and eligible for distribution in a bankruptcy case

22  without regard to conditions precedent, i.e. unmatured

23  claims can get paid albeit unmatured interest does not,

24  except to the extent you're talking about an executory

25  contract.

1          I'll also then talk about the difference

2     between claims as treated in a bankruptcy case and claims

3     independent and outside of a bankruptcy case.  And by that,

4     I mean claims for money damages.  And then I will talk about

5     claims or causes of action that relate to termination of

6     rights under contracts.  Okay.

7          Does anyone want to favor me with the docket

8     number where we talked about whether or not the claims that

9     Kane has against Mr. Ortiz would be tried in the Bankruptcy

10    Court which, as I remember, I wasn't a big fan of, but you

11    all convinced me.  Something about efficiency and the risk

12    of disparate rulings.  So I had to go along since I made the

13    original sin of even keeping this case here at all, as well

14    as the removed action.

15         MR. ORTIZ:  Your Honor, this is Mr. Ortiz.  And if

16    I could clarify, it might save us going to the transcript.

17    I'm not saying that I was dragged into -- I'm not

18    complaining about being dragged into defending against Mr.

19    Kane's proof of claim.  What I was saying was that I wanted

20    to be afforded the rights to answer -- put my Affirmative

21    Defenses and counterclaims properly and frame the pleadings

22    properly.

23         And I think that when we all signed Doc. -- the

24    agreed jury trial order that was signed at Doc. 891, we

25    resolved the fact that all of -- that Mr. Kane sued me as a

1   non-Debtor, I am defending as a non-Debtor, and we're going

2   forward with a jury trial to Judge Scriven.

3          So I think we've resolved that in the last week.

4   That was filed on, I think, October 23rd.  So I don't think

5   there's any issue.  I think the only issue that's left is

6   the fact that Mr. Kane is now trying to say that Judge

7   Scriven shouldn't be able to hear my counterclaims, which

8   are inexplicably intertwined with defense that both the

9   Debtor and I had as to what Mr. Kane is claiming under

10  his --

11          THE COURT:  Okay, please don't start arguing --

12  please, I don't want to argue the merits yet.  I really do

13  want to set the table.

14          MR. ORTIZ:  Okay, I'm sorry.

15          THE COURT:  I looked at what you said on paragraph

16  -- on page 2, paragraph 1, capital A of Document 978.  You

17  said:  Mr. Kane has improperly, and without support in law,

18  brought purported claims against me through his second

19  amended POC as if I'm a Debtor.  That's what you said, sir.

20          And if it's improper -- and to be sure, it's not

21  usual.  But if you agreed to it, it's proper.  So I'm

22  starting with the very first, out-of-the-box statement that

23  you made.  And in each of the ensuing ones:  I incorporate

24  herein in this subparagraph B what is stated above in

25  subparagraph 1A.  So I have to cut through to that.

1          If you're now saying that, yes, you agreed that

2     claims that are in the proof of claim as against the Debtor,

3     to the extent that they apply to you, may be tried as part

4     of this Bankruptcy/District Court litigation, then I will

5     move on.  Is that what you're saying, Mr. Ortiz?

6          MR. ORTIZ:  Your Honor, yes.  And just to be

7     clear, what I was doing was preserving my rights because I

8     did not agree for Mr. Kane to be able to come and now say

9     unjust enrichments, mesne profits and all those things.

10    That's what I was talking about in there.

11         I originally agreed to the proof of claim as it

12    was and I had no problem with that.  When he -- then when he

13    changed, that's what I have a problem with, so that's what I

14    was speaking about.  And I apologize if I didn't make it

15    more clear as to that.

16         THE COURT:  Okay.  So you're just talking about

17    the causes of action relating to the squatter issue, all

18    right.

19         MR. ORTIZ:  Correct, Your Honor.

20         THE COURT:  All right.  All right, let me go and

21    now talk about claims and use of the word breach and default

22    as it relates to the Second Amended Proof of Claim.

23         With respect to the Debtor, as I've discussed in

24    the past, an allowed claim need not be a matured claim in

25    terms of whether it's due and payable altogether now.  And I

1    gave as a typical example an installment promissory note

2    whereby there are many installment payments left to be paid

3    when the petition is filed.

4          The entirety of that claim is includable as part

5    of an allowed claim that is payable pursuant to, in Chapter

6    11, a Chapter 11 Plan of Reorganization.  If it's a 7,

7    payable by a Chapter 7 Trustee through a distribution under

8    Chapter 726.

9          Outside of bankruptcy, if an obligation is subject

10   to a condition precedent such as a declaration of default as

11   defined in a contract, then the claim exists but is not

12   payable and a lawsuit may be premature.  And that has to do

13   with the obligation to pay money.

14         If there is a claim that is not for the payment of

15   money but is something different, such as for the

16   termination of a lease, for the termination of the right to

17   possession, for the termination of a lease option.  And to

18   the extent that those rights will exist until and unless

19   some condition precedent has been met or performed, then the

20   default, the breach, may be relevant to that.

21         So reviewing all these different moving parts of

22   types of claims through different lenses regarding whether

23   breach or default is relevant.

24         Now, do I think that the proof of claim, the

25   second amended proof of claim, to the extent that Mr.

1   Ortiz's individual liability is subject to a condition

2   precedent or -- well, condition precedent that has not been

3   met or performed, then that is a defense on Mr. Ortiz's

4   part.

5          I think that we can infer and I'm going to harken

6   to the body of law that says it's a short and plain

7   statement to put you on notice of what the pleader is

8   seeking.  To me, it's very clear that Mr. Kane is seeking

9   money from Mr. Ortiz for breaches and defaults of either

10  Mr. Ortiz or anyone else that is a signatory to that lease.

11  It is clear to me.

12         The footnotes were put in there because, Mr.

13  Ortiz, you didn't want the Court to make any determination

14  as to breach or default as to the Debtor that would spill

15  over to provide a ruling as to you.  That's my sense of why

16  we did that.  And that was done in reaction to your express

17  request.

18         Now, if you're doing a tap-dance on this and

19  saying, "I got what I wanted and now you can't use that

20  proof of claim against me individually because it doesn't

21  allege a default," I think that's gamesmanship.

22         But I will require the Debtor -- excuse me, Frank

23  Kane, to file a more definite statement.  To the extent that

24  Mr. Kane is seeking monetary damages against Mr. Ortiz

25  through the proof of claim -- because that's all it can do,

1   it can only seek monetary damages -- to the extent that it

2   is doing that, Mr. Kane, I shouldn't say "it," "he" is doing

3   that, I'm going to require him to state the nature of the

4   breach or default that gives rise to that remedy.

5        And so we know that the proof of claim has been

6   segmented into certain areas, such as the indemnity

7   agreement, or the indemnification agreement.  Mr. Kane need

8   only say:  Mr. Ortiz breached that because.

9        Then if you have a response to that which would be

10  denied, I didn't breach it because a condition precedent has

11  not been met or performed, that's a very simple way of

12  saying something that doesn't need to be said in 36 pages.

13       And so, Mr. Ortiz is complaining about the lack of

14  formality of precise pleading of elements, I think that he's

15  on fair notice.  But, for his benefit, I will -- I ask Mr.

16  Kane to identify, vis-a-vis Mr. Ortiz, where the breach and

17  default, to the extent that they are conditions precedent to

18  liability for payment -- not liability because it's clear

19  you're going to be liable if the condition precedent has

20  been met or performed.  But in terms of the obligation to

21  pay at this point, I think that is a fair request because of

22  the weird nature that bankruptcy permits claims to be

23  lodged. It's in a proof of claim, not a formal complaint.

24       But I do determine that what is in that second

25  amended proof of claim is extensive and it is broad and it

1   is detailed, and I think fairly puts you on notice of what

2   Frank Kane wants.  If you're mystified by that, I'll give

3   you a more definite statement and that'll be that.

4           Okay.  With respect to your complaints about the

5   statute of limitations, et cetera, I think I've made some

6   remarks about when it was that the squatter happened, that

7   for purposes of the statute of limitations, it's the

8   squatter statute of limitation, if there are damages that

9   flow from that, those are unjust enrichment.

10          My personal sense, this is not a ruling, it is

11  just my personal sense of fairness, that if I declared a

12  mutual mistake under the lease, which means that Frank Kane

13  is at fault and Howard Avenue Station and Ortiz are at fault

14  because they made a mistake, then it seems to be unfair to

15  say that from the get-go on day one of the lease, then the

16  squatter rights -- the squatter damages should start

17  running.

18          It's on Frank Kane.  Frank Kane's attorney did

19  that, and I think that, to me, is somewhat unfair.  That is

20  total *dictum*, it's just my sense.  I think that the parties

21  are throwing every little thing like the kitchen sink, up

22  against the wall, and that a better strategy would be to

23  say:  What are your most important claims that you can win

24  and get out of this thing?

25          And I think a jury is probably going to look

1   poorly on saying:  Hey, your guy made a mistake, Mr. Kane,

2   but you want this guy to go back and pay rent during a time

3   when he believed, based on his mistake as well, that he was

4   entitled to be in the second floor?  Come on.

5          So I wish you all would narrow it down, but you've

6   done a pretty good job with the chart.

7          What am I going to do with the rest of this?  I

8   gave you, Mr. Ortiz, the right to file an answer with

9   defenses.  Instead, you commingle things.  You commingled

10  against Rule 9013, which I think is not the first time I've

11  warned you against this, a Motion to Dismiss or Strike with

12  an Answer.

13         I am going to allow you, after the Motion for More

14  Definite Statement is filed -- which shouldn't take any time

15  at all, because Mr. Jacobs knows exactly the theories of his

16  claims -- his client's claims against you individually --

17  for you to file an Answer and Affirmative Defenses to the

18  proof of claim and to those counterclaims that -- excuse me,

19  the third party claim.

20         You may file the counterclaims to the second

21  amended proof of claim along with your Affirmative Defenses

22  and Answer.  It's going to be in one document, and it can't

23  suck in every paper that is in the case record or some other

24  adversary proceeding record.

25         If it's a statute of limitations defense, it's a

1    statute of limitations defense, pure and simple.  If it's a

2    statute of limitations defense as to the contract claim, you

3    say that, and you say the applicable statute of limitation

4    gave four years to bring this claim against me.  It's past

5    the time of four years.  But remember the relation-back

6    doctrine.  And Mr. Meacham knows this pretty well.

7            The *Beem* case, B-e-e-m, the Eleventh Circuit.  If

8    it's anywhere in the record, it was made.  And for

9    convenience of you parties, we said let's try it all with

10   14-1070.  If it's over there in 12-815, or whatever the

11   number is, we will get back to it.  We will circle back to

12   it.  But the date of the original claim is what controls

13   here.

14           Unless you want me to go haywire on you all and

15   I'm just going to say I'm dismissing everything, or I'll

16   refer it over to the State Court, I will -- I mean, I just

17   can't have you all ask me for this unusual procedural way of

18   dealing with things because you allege it's for efficiency,

19   and then say I gotcha because it's sitting over in 12-815,

20   and so in 14-1070 it's a late add.  I'm not going to go

21   there.

22           But if you have a legitimate statute of

23   limitations defense, raise it as to each type of claim.  The

24   indemnity agreement, the lease claim, the eviction claim --

25   well, I think you've already been evicted.  Whatever it is.

1   But make sure that the Affirmative Defense clearly says

2   which claim you are addressing.

3         Now, if you wanted to use one Affirmative

4   Defense titled statute of limitations, then you may have

5   subparagraphs there.  Subparagraph 32, not liable for any

6   main profits or unjust enrichment because the deadline for

7   pursuing that was X under Chapter -- man, I just forgot what

8   the statute of limitations chapter was, ouch.  Was it 90?

9   91?  92?  I'm getting old.  Anyway, that's what I will

10  allow, and that's how I'm going to resolve these papers,

11  Kane's Paper No. 975 and Ortiz's Paper No. 978.

12        MR. JACOBS:  If I may, Your Honor.  Florida

13  Statute 95.

14        THE COURT:  Oh, thank you.

15        MR. JACOBS:  You're welcome.  A couple quick

16  questions.

17        THE COURT:  Yes.

18        MR. JACOBS:  The more definitive statement, does

19  Your Honor want me to amend the proof of claim to make it

20  more definitive on those issues --

21        THE COURT:  No.

22        MR. JACOBS:  -- or just file a separate statement

23  saying these are the conditions precedent (audio cutting

24  out)?

25        THE COURT:  Yes.  Because I think that that will

1    -- I think Mr. Ortiz knows your theory but it will set it

2    out clearly, it will aid in the construction of the jury

3    questions that you'll pose, the jury instructions as well as

4    any special verdict questions.  So it's --

5              MR. JACOBS:  And then --

6              THE COURT:  Yes.

7              MR. JACOBS:  Sorry.

8              THE COURT:  Go ahead.

9              MR. JACOBS:  And then you mentioned your ruling on

10   both issues today.  One of the issues is the multiple

11   counterclaims and abstention.  Is Mr. Ortiz permitted to

12   refile those counterclaims, and we'll just deal with

13   abstention at that point or are we going to discuss that

14   today?

15             THE COURT:  I think that they need to be stated in

16   a more succinct way.  If they relate to arguments of

17   additional damages because of the way the building has been

18   fraught with some maintenance issues lately, that's not in

19   my bailiwick.  And so I need to see clearly what the

20   counterclaims are and what they're based on.  And if they're

21   not compulsory, I don't want to entertain them.  They can be

22   brought separately.

23             But I need to have him replead in one document so

24   that it makes sense, a short and plain statement.  And if

25   you have all of these Affirmative Defenses, you know,

1  ratification is a word.  It's not -- it's a legal

2  conclusion, Mr. Ortiz.  That's an example.

3          Mr. Kane ratified my noncompliance by doing X

4  and Y.  Mr. Kane amended -- or accepted an amendment, an

5  unwritten amendment by a course of performance.  Well, of

6  course, that's not allowed under the lease, I don't know why

7  you would put that in there, but whatever.

8          Mr. Kane's claims are barred by the parol evidence

9  rule because he seeks to include a provision in the lease

10  that is not in the lease, namely, quote, whatever it is,

11  close quote.

12          Mr. Kane's claims are barred by accord and

13  satisfaction.  How?  You paid him?  You paid him in full?

14  That's a legitimate defense.  That's payment.  Mr. Kane's

15  claims are barred by duress?  Good luck getting that one by

16  a jury, but you're going to have to spell it out, Mr. Ortiz.

17          Did he come to your house and take a big pickax

18  and hold it over your head and say, "Sign this lease"?  Come

19  on.

20          It looks like you went through a pleading book and

21  just picked up every single defense that was there.  Mr.

22  Kane's claims are barred by release?  Where is the release?

23  And I'm going to tell you, Mr. Ortiz, release has a meaning.

24  You'd better spell it out, and you'd better attach the

25  release.  Otherwise, you're in violation of 9011.  If I have

1   more violations -- if I have a violation of 9011 and it's

2   repeated, I'm going to be sanctioning.

3          So I want you to be very careful.  Just don't go,

4   because you're a *pro se* person, through the pleading books

5   and try to think of everything in there because you're

6   afraid you're going to leave something out.  Understood?

7          MR. ORTIZ:  Yes, Your Honor.  I do have one quick

8   question.  For instance, I know that before that, you have

9   -- there's a document that I filed, a Motion to Correct the

10  Record that has a litany of, for instance, things were I say

11  that Mr. Kane amended the lease verbally and so forth.  I'm

12  assuming that -- can I just refer to that document or does

13  that need to be put in there?  Because that's a bunch of

14  pages.

15         THE COURT:  No.  If you want precision in the

16  proof of claim, you put precision in your Answer.  All you

17  have to do is say:  Mr. Kane and I agreed to amend this

18  orally on this date and here's what we agreed to, and here's

19  the piece of paper that evidences that or the email or --

20  you know, something more than what you have here.

21         Now, I am looking at your Count 1 of your

22  counterclaim.  Count I completely addresses the maintenance

23  of the building way postpetition.  That belongs over in

24  State Court.

25         Let's see what Count II is.

1          MR. ORTIZ:  Excuse me.  One, Your Honor, that is

2     just -- that is intertwined with my defense of the mesne

3     profits and so forth, and that's been ongoing since 2016 or

4     '17.  That's absolutely (audio cutting out).

5          THE COURT:  No, it doesn't have anything to do

6     with the main profits.  It doesn't.

7          MR. ORTIZ:  It does, Your Honor.  How is he --

8     (audio cutting out).

9          THE COURT:  No, no.  Excuse me, let me -- may I

10    finish?  He's going to say --

11         MR. ORTIZ:  Sorry, Your Honor.

12         THE COURT:  -- that your squatting up there has

13    meant that I can't relet it to anybody else, so I should get

14    the use value of it, okay?

15         Your defense to that is:  You can't use it anyway,

16    Pal.  You couldn't use it at that time because nobody would

17    go up there, it was a piece of junk.  That's a denial.  It's

18    a denial that he could have used it.  You don't have to go

19    into all of this.  It's not a claim.

20         A claim is asking for relief on your part.  You

21    bring that over in the State Court.

22         Now, let's see what Count II is so I can give you

23    some guidance on that.

24         MR. ORTIZ:  Your Honor, could I ask you a quick

25    question on that?  One last thing?

1          THE COURT:  Yes.

2          MR. ORTIZ:  I'm just unclear.  I thought that I

3    would be able to seek affirmative relief because he breached

4    it.  He's seeking against me -- and you're right, I'm going

5    to say he couldn't use it because no one would go up there

6    distraught, what have you.

7          But then I'm seeking affirmative relief on the

8    other end saying he breached it by not fixing it, so I want

9    relief.  So you're saying I'm not allowed to do that in a

10   counterclaim?

11         THE COURT:  Mr. Ortiz, you're not even allowed to

12   be up there.  So it has nothing to do with the main profits.

13   Your claim for relief because the building is damaged has

14   nothing to do with the second floor.  You're asking for

15   relief on the first floor.

16         You can't have your people in there operating

17   Cheap because the building is damaged.  That belongs in the

18   State Court.  It looks like Count II relates to that.  Count

19   III relates to that.

20         Now, what about Count IV?  That one --

21         MR. JACOBS:  The same thing, Your Honor.  Because

22   the building was --

23         THE COURT:  Oh, yes.  That belongs over in State

24   Court.

25         MR. ORTIZ:  I don't understand.  If the roof

1  leaked onto the first floor, and I'm claiming damages from

2  the roof leak onto the first floor, how is that not a part

3  of my counterclaim?

4       THE COURT:  You have a claim.

5       MR. ORTIZ:  If it comes from the second floor --

6       THE COURT:  Mr. Ortiz, I'm not saying you don't

7  have a claim.  I'm saying it's not a compulsory counterclaim

8  and I am not going to hear it.  This is all part of the

9  damaged building problem.  That's in State Court.  I already

10  said I'm not going to touch that thing.

11       And if the Cheap people, whoever's running Cheap,

12  aren't allowed to even be in the first floor, well, then --

13  and that's determined by the jury in Judge Scriven's chamber

14  -- courtroom, rather -- then your interference claim will go

15  away in the State Court.  And that's why those things will

16  be abated.

17       MR. ORTIZ:  But the State Court is May 2019

18  forward.  I'm going pre-May 2019.  This isn't from May 2019.

19  This is Mr. Kane's own words in the reformation case where

20  he said the upstairs was -- I forget the word he used -- in

21  shambles and so forth.  This isn't current stuff, Your

22  Honor.  This is pre 2019.

23       THE COURT:  Mr. Ortiz, I've ruled --

24       MR. ORTIZ:  And if he's going back to 2009 --

25       THE COURT:  -- that the second floor is off

1   limits.  You can say that Frank Kane is really not being

2   truthful because he didn't -- you know, there's no unjust

3   enrichment because no one would go up there, it was a

4   hellhole.  That's a defense; it's not a claim.

5          MR. ORTIZ:  All right, Your Honor.  I mean, I

6   disagree with not compulsory counterclaims, but I don't know

7   how to handle that, but I'll go with whatever your order is.

8          THE COURT:  Well, you're talking about all these

9   chit-chats we had about 2018 on.  That's what the State

10  Court case is about.  It's about the final roof failure or

11  the leakage that you warned about and I said:  Get it fixed,

12  I don't want to see you all have more disputes.  And then it

13  didn't get fixed, more disputes happened, and I said I'm not

14  doing it.

15         So your counts here, it looks to me that they are

16  not compulsory, they relate more appropriately to what's

17  going on in State Court.  And furthermore, if the jury

18  upstairs rules against you regarding whether you can have

19  two leases for the same space, then your Count IV and maybe

20  all the rest of them go away.

21         So that's why they -- the rest of the State Court

22  cases are abated, so bring them over there.  Did you not

23  bring them over there, Mr. Ortiz?

24         MR. ORTIZ:  What?  The counterclaims?

25         THE COURT:  Yes.  Did you or --

1          MR. ORTIZ:  No, not going back to 2009, Your

2    Honor.  I'm defending against Mr. Kane's claims that he's

3    going back to 2009, and I'm going to defend and say the

4    roof, which is part of what was in shambles all along -- it

5    just happened to start -- it didn't start leaking like it

6    did until 2016 and 2017, but it's been known since 2009, so

7    that's my defense.  An absolute compulsory counterclaim with

8    the defense of unjust enrichment because he was required to

9    fix it.

10         THE COURT:  You're not -- I'm not getting your

11   point.  I've ruled, and I've told you this several times.

12   What's going on, on the second floor is not your business,

13   period.

14         MR. ORTIZ:  But, Your Honor, it comes down to the

15   first floor.  It's not just the second floor.  It goes to

16   the first floor.  It damages the entire first floor.

17         THE COURT:  Okay.

18         MR. ORTIZ:  So that's what I'm trying to explain.

19   I'm not trying to fight for the second floor.

20         THE COURT:   Okay, Mr. Ortiz, if -- I'm trying to

21   see how it's compulsory.  If they're saying that you owe

22   unjust enrichment for a second floor that is not occupiable

23   because you held it hostage, your defense is it was

24   occupiable and we didn't keep you out of it and therefore --

25   or it was untenantable so we wouldn't have had to pay rent

1   anyway.  It wouldn't matter.

2            And you're saying that in 2009, you can show

3   damages to the first floor because of the way the second

4   floor was?

5            MR. ORTIZ:  I can show ongoing damage that has --

6   because of the second floor, that is failure to fix it like

7   he was supposed to, how it deteriorated over time.  And,

8   yes, I will have an expert who will show that.  Yes.

9            THE COURT:  Okay.

10           MR. ORTIZ:  That his ongoing breach of not fixing

11  the roof on the second floor and repairing the second floor

12  caused damage to the first floor.  Yes.

13           THE COURT:  And under Chapter 83, you put Frank

14  Kane on notice of that in 2009 and you demonstrated that you

15  were being damaged?

16           MR. ORTIZ:  I didn't have to proceed under that 83

17  because it wasn't wholly untenantable at that time.  I was

18  just dealing with it, and I was constantly bringing it to

19  his attention.

20           I've got record of his maintenance guy coming up

21  there with my maintenance guy and us pointing stuff out.

22  So, yes, Your Honor, there's plenty of records.  And I paid

23  rent over that time, so I wasn't asking for an excuse not to

24  pay the rent until it was untenantable.

25           THE COURT:  Well, if I were you, I'd be very

1   careful because if you didn't suffer any damages, not a

2   penny -- maybe you were nervous because you thought the roof

3   might, you know, cave in.  But if you didn't suffer a penny

4   in damages, you shouldn't be putting your name to a

5   counterclaim like this.  And furthermore, it looks like

6   it's stale.

7        MR. ORTIZ:  I will definitely go through it with a

8   finetooth comb and I'll take out whatever I think I didn't

9   have in damages and so forth, Your Honor.  I'll clean it up.

10        THE COURT:  But all these things -- all this

11   business about, you know, 2018 and forward -- 2017, that

12   belongs over in State Court.

13        Well, we'll see what you put in and you'll have to

14   convince me it's a compulsory counterclaim and you'll need

15   to try it to one of the elements of the second amended proof

16   of claim so that I could see how it relates.

17        But there's nothing about what I said today that

18   would prevent you from suggesting that the second floor,

19   there's no use value to it.  In fact, you, yourself, kept

20   yourself out of it because it was crummy, as I remember.

21        Okay, so I don't know what kind of ruling that is,

22   but I'm granting in part and denying in part Frank Kane's

23   Motion to Dismiss or Abstention, that's No. 975.

24        I am denying in part, in large part, Mr. Ortiz'

25   Motion at 978, although I will require a Motion for More

1    Definite -- excuse me, I will require a more definite

2    statement, and I'm going to tie that to a Rule.  One moment,

3    let's see.

4            I'm thinking it's in big Rule 12 which is I think

5    adopted by reference in 7012(b).  Let me see.  Yes, it's

6    Rule 12(e), which is picked up by our Bankruptcy Rule

7    7012(b).  So I'm requiring a more definite statement of the

8    precise breach that forms the basis for the right to collect

9    money from Mr. Ortiz.

10           I am requiring Mr. Ortiz to replead in one

11   paper, without a motion embedded in it, and meeting the

12   requirements of 7008, an Answer, any Affirmative Defenses,

13   with sufficient detail, meaning the elements, and there are

14   some books that provide the elements if you need to look at

15   one, I know that White's, W-h-i-t-e-s, Pleading Book has

16   some, and any counterclaims, any compulsory counterclaims.

17           To the extent that you wish to include relief that

18   is provided in Rule 12 in the form of a motion, those things

19   are stated, themselves, as defenses, such as failure to

20   state a claim.  But the failure to state a claim has to come

21   -- has to be based on what the second amended proof of claim

22   and the more definite statement says.  And it must be with

23   specificity, meaning if there's a breach of contract claim

24   pleaded but one of the elements is missing, you have to

25   point that out, not just "it fails to state a claim because"

1  although you've done a pretty good job on that in the past,

2  and you have got some detail on that in 978, or if the

3  defense is improper venue or something.

4       But I don't expect that there really should be

5  any Rule 12 type defenses that should be in there other

6  than traditional -- and by that, I mean the 12(b) type of

7  defenses.  And that the defenses I would expect to see are

8  Affirmative Defenses and, again, any compulsory

9  counterclaim.

10      Until I see what Mr. Ortiz files, it's premature

11  for me to look at abstention because I am granting Frank

12  Kane's motion, as I said, in part.  It's the dismissal part.

13      So that we don't have any arguments about an

14  order, let's try to sketch it out.  Number one, No. 975,

15  which is Frank Kane's motion, is granted in part and denied

16  in part.  It is granted with respect to the Motion to

17  Dismiss, without prejudice to Mr. Ortiz to replead his

18  Answer, Affirmative Defenses, and compulsory counterclaims.

19  The balance of the motion is denied.

20      MR. JACOBS:  Without prejudice, Judge?

21      THE COURT:  Hold on.  978, which is Mr. Ortiz'

22  motion, is granted in part and denied in part.  It's granted

23  only to the extent that Frank Kane must file a more definite

24  statement regarding the breaches or defaults that entitle

25  him to money damages under any contract to which he and

1  Tommy Ortiz are parties.

2         I will give Mr. Kane -- how many days do you need

3  to do that?

4         MR. JACOBS:  My only concern is that Mr. Vogt is

5  in depositions all week next week, so I'd ask until

6  Wednesday the 18th.

7         THE COURT:  Well, you said Wednesday of next week?

8         MR. JACOBS:  Wednesday the 18th.

9         THE COURT:  Oh, the 18th.  Oh, okay, I misheard

10  you.  All right.  I don't think I need all this time, but

11  how about until November 23rd.

12         MR. JACOBS:  I'd rather give myself less time so

13  things get moving.

14         THE COURT:  November 20th?

15         MR. JACOBS:  That's fine, Judge, November 20th.

16         THE COURT:  Okay.  November 20th.  And if you

17  could track the segmentation that you all have prepared in

18  the chart, where you've outlined the different theories in

19  the proof of claim, I think that's a good way to organize

20  the more definite statement, to the extent it pertains to a

21  contractual alleged entitlement, okay?

22         MR. JACOBS:  Understood, Judge, yes.

23         THE COURT:  Okay.  And then, Mr. Ortiz, once you

24  get that -- okay, so you'll get it on or before November 20

25  -- well, do you receive things by CM-ECF -- I mean, by

1   email, Mr. Ortiz?

2           MR. ORTIZ:  I get it by -- no, I get it by email

3   when someone sends it to me directly.

4           MR. JACOBS:  My paralegal generally has Mr. Ortiz'

5   email, I believe, but I'll make sure he does when it gets

6   filed.

7           THE COURT:  Okay.  Then assuming that you're going

8   to get an email with it when that's filed, Mr. Ortiz, how

9   long would you have then to prepare your Answer, Affirmative

10  Defenses and compulsory counterclaims?

11          MR. ORTIZ:  Well, being that the next week's going

12  to be Thanksgiving, I would like until the weekend of

13  December 13th.  That would be two weeks after Thanksgiving.

14          THE COURT:  Okay.  So are you saying -- okay, the

15  13th is a Sunday.  So you're saying the 14th, a Monday?

16          MR. ORTIZ:  Yes.  Yes, Your Honor.

17          THE COURT:  That's fine.  That's when your Answer

18  will be due.  Okay.

19          MR. ORTIZ:  Thank you, Your Honor.

20          THE COURT:  And, you know, you do have the right

21  to receive papers that are filed on the docket via email

22  from our court.  It's an election that you have to make.

23  And if I have never told you about that, or if you didn't

24  know about it, my apologies, but it's something for you to

25  consider.

1           Let's see, now.  Ms. DeGrave wanted to roll back

2      the status conference on the chart -- finishing up the

3      chart, I think until all this was cleared up, which makes

4      sense.  I don't know when we rescheduled that status

5      conference.

6           COURTROOM DEPUTY:  November 25.

7           THE COURT:  Okay.  That's not going to work now.

8      So we'll have to enter an amended order resetting it to

9      sometime after the Answer comes in.  I'd want you all to

10     work on the chart together after that happens, and I don't

11     know if you all are going to be inclined to really push hard

12     in the last two weeks of December.

13          I'm all for that, but I know that holidays and,

14     you know, Christmas and Hanukkah and all that get in the

15     way.  So I need a sense from -- I don't have Ms. DeGrave's

16     input but hopefully Mr. Meacham will put on his hat as if

17     he's her and give me a sense of when Ms. Martin should bring

18     us back together.

19          MR. JACOBS:  I think Mr. Meacham's gone.

20          COURTROOM DEPUTY:  I think he dropped off.

21          THE COURT:  Oh.  Okay.  Mr. Ortiz, you know, you

22     work hard on these things too.  How long do you think it

23     will take for you, once we get these pleadings at issue, for

24     us to expect to come together and have an almost completed

25     chart, if not complete?

1          MR. ORTIZ:  I would think if I filed the Answer, I

2    guess it would depend on what Mr. Kane files in response to

3    my Answer, so would it be probably by mid-January.

4          THE COURT:  Oh, you're right.  I forgot about the

5    fact that Mr. Kane may have an Affirmative Defense that --

6          MR. JACOBS:  I may have a response to the

7    document.  It depends what he files.  Assuming he's going to

8    file some kind of counterclaim, I have to respond.

9          THE COURT:  That is right.  That is correct.  Boy,

10   let's put it towards the end of January, then, and hopefully

11   there won't be any curveballs, it'll be a straight up Answer

12   and Affirmative Defenses and Compulsory Counterclaims by Mr.

13   Ortiz, it'll be a simple Answer by Mr. Kane.  You all will

14   see what the issues are for trial, and then we can come

15   together at the end of January and hopefully finish the

16   chart.

17         COURTROOM DEPUTY:  For this adversary today,

18   should we just make it a status conference?  Because once

19   all this is done, then we can do a status conference on the

20   adversary and the general?

21         THE COURT:  Yes.

22         COURTROOM DEPUTY:  Then I'm looking at January

23   29th.

24         THE COURT:  Okay.

25         COURTROOM DEPUTY:  Which is a Friday.

1        THE COURT:  So we need an amended order in the

2   case, right, that resets the November status conference to

3   January --

4        COURTROOM DEPUTY:  Well, we can just do a notice.

5   I don't think the order does anything but just continue the

6   status conference so --

7        THE COURT:  Okay.  And then you'll do a notice in

8   the adversary?

9        COURTROOM DEPUTY:  A notice in just --

10       THE COURT:  A docket notice or a notice notice?

11       COURTROOM DEPUTY:  Unless Mr. Jacobs wants to do

12   an order from this hearing and say that we'll come back for

13   a status conference on January 29th in the adversary, with

14   all these other --

15       THE COURT:  No.  We should do a notice of status

16   conference.  It's us.

17       COURTROOM DEPUTY:  Okay.

18       THE COURT:  Yes.

19       COURTROOM DEPUTY:  That's fine.

20       THE COURT:  And it's going to be in this one and

21   in the other one.

22       And Mr. Ortiz, I'm asking you to be a little less

23   rigid in the way you're looking at this holistically because

24   the way we set it up, I thought that our guiding principal

25   was we were trying to do this as efficiently as possible

1  regarding the core bankruptcy-related issues, bring you in

2  so you're not tried as a separate trial somewhere else, and

3  cover as much, if not all, of the same issues where they lie

4  in 12-815 or wherever they lie, as possible in 14-1070.

5       And so when the jury makes a decision on something

6  in 14-1070, that supplies the ruling for the identical issue

7  in 12-815, we will just paper that up in 12-815.  So try to,

8  if you can, think of this in the unusual posture that we

9  have, and how we are trying to accord due process by

10  mooshing together many concepts, the bankruptcy claim,

11  reconciliation process with nonbankruptcy claims against

12  third parties, i.e. you, et cetera.

13       And let's not make it harder gotchas.  We really

14  want to get the merits in front of the jury on as many

15  issues as possible that we have folded into 14-1070 and the

16  second amended proof of claim and your responses to those,

17  as well as the third party complaints, et cetera.

18       It's very complex.  Let's not make it more complex

19  than it already is, okay.

20       MR. ORTIZ:  Yes, Your Honor.  Thank you.

21       THE COURT:  Yes, you deserve, Frank Kane deserves,

22  the PNC people deserve to get to the finish line on this.

23  All right.  I will -- since I wrote out most of this order

24  as I was dictating it, we'll do the order on these two

25  papers that were before me today.  Okey-dokey?

1          MR. ORTIZ:  Thank you, Your Honor.  Have a good

2     weekend.

3          THE COURT:  All right.  You all, too.  Take it

4     easy.  It's been a stressful week.

5          MR. JACOBS:  Thank you, Judge.

6          THE COURT:  Take care.  Bye-bye.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **CERTIFICATE**


This certifies that the foregoing transcript was produced to the best degree possible from the digital recording of in-person, Zoom videoconference, and/or CourtCall telephonic audio transmissions as recorded, logged, maintained, and provided by court staff.


_____          _____
Cheryl Culver                              November 20, 2020
Certified Court Reporter                   Date

For Johnson Transcription Service
Approved Court Transcribers for
U.S. Bankruptcy Court
Middle District of Florida

# Exhibit "C"

ORDERED.

**Dated:  July 12, 2019**

Catherine M. Ewen

Catherine Peek McEwen
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

HOWARD AVENUE STATION, LLC,                          Case No.:  8:12-bk-08821-CPM
                                                     Chapter 11

      Debtor.
_____/

### ORDER GRANTING EMERGENCY MOTION TO ABATE THE
### PAYMENT OF ADEQUATE PROTECTION TO FRANK R. KANE

THIS CASE came before the Court for an emergency hearing on May 16, 2019, at 2:30 p.m. (the "**Hearing**") for consideration of *Debtor's Emergency Motion to Abate the Payment of Adequate Protection to Frank R. Kane* (Doc. No. 995) (the "**Motion**"), *Thomas Ortiz's Adoption of "Debtor's Emergency Motion to Abate the Payment of Adequate Protection to Frank R. Kane" (Doc. No. 995), Supplement to "Debtor's Emergency Motion to Abate the Payment of Adequate Protection to Frank R. Kane" (Doc. No. 995), and Declaration of Thomas Ortiz in Support Thereof* (Doc. No. 999) (the "**Adoption**"), and *PNC Investments, LLC, The Block in Soho, LLC, and VMOB, LLC's Joinder in Debtor's Motion to Abate* (Doc. No. 888 filed in Adv. Proc. 8:14-ap-1070-CPM) (the "**Joinder**").   The Court, having reviewed the Motion, the joinders, and the record and having heard the argument of counsel,  and for the reasons stated orally and recorded in open court, which shall constitute the decision of the Court, it is

**ORDERED**:

1.    The Motion is granted as provided below.

2.    The payment of rent to Frank Kane, whether made by the Debtor or through the Debtor from payment made by a third party, is governed by Fla. Stat. § 83.201. Adequate protection payments are abated until the required repairs have been made in accordance with said statute, the Notices of Violation issued by the City of Tampa have been cured, and the Orders to Vacate issued by the City of Tampa have been lifted, at which time any withheld rent and/or adequate protection payments shall be paid. However, if the premises are abandoned, the payments withheld may be retained pursuant to Fla. Stat. § 83.201.

3.    This Order is without prejudice to any claim of damages alleged by the Debtor, Thomas Ortiz, PNC Investments, LLC, The Block in Soho, LLC, and VMOB, LLC against Frank Kane.

*Attorney Amy Denton Harris is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within 3 days of entry of the order.*

2

# Exhibit "D"

ORDERED.

**Dated:  August 28, 2019**

Catherine Peek McEwen
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

HOWARD AVENUE STATION, LLC,                Case No. 8:12-bk-8821-CPM
                                           Chapter 11

        Debtor.
_____/

### ORDER DENYING THOMAS ORTIZ'S MOTION FOR REHEARING OR MODIFICATION OF ORDER GRANTING EMERGENCY MOTION TO ABATE ADEQUATE PROTECTION PAYMENTS TO FRANK R. KANE

THIS CASE came on for consideration of Thomas Ortiz's Motion for Rehearing or Modification of Order Granting Emergency Motion to Abate Payment of Adequate Protection to Frank R. Kane (the "Motion") (Doc. 1012).  The Motion suggests that the subject order (the "Order") (Doc. 1007) requires that, unless the Debtor abandons certain property (the "Premises") being leased to the Debtor by Frank R. Kane ("Kane"), the Debtor must pay Kane any rent and/or adequate protections being withheld by the Debtor until repairs to the property at issue have been made, Notices of Violation have been cured, and an Order to Vacate the premises has been lifted.  However, the Order expressly states that payment of rent to Frank Kane "is governed by Fla. Stat. § 83.201," and the cited statute states in part, "This section is cumulative

to other existing remedies, and this section does not prevent the tenant from exercising his or her other remedies."   In addition, decretal paragraph 3 of the Order include language substantially equivalent to the statutory language just quoted.   Specifically, this paragraph states, "This Order is without prejudice to any claim of damages alleged by the Debtor, Thomas Ortiz, PNC Investments, LLC, The Block in Soho, LLC, and VMOB, LLC against Frank Kane." Thus, the Order does not foreclose the Debtor from asserting, for example, as a setoff against abated payments, lost profits resulting from the Debtor's inability to occupy the Premises, or any other remedy the Debtor may have.   Consequently, the Order needs no modification.

To the extent the Motion asserts that Fla. Stat. § 83.201 should not govern the payment of rent to Frank Kane in light of the Premises' being untenantable, the Court disagrees. This statute applies when, as here, "the lease is silent as to *procedures to be followed* to effect repair or maintenance and the payment of rent relating thereto."   The entitlement of the Debtor and Mr. Ortiz to "peaceably and quietly hold and enjoy the Demised Premises," cited in the Motion as included in paragraph 19 of the Commercial lease, and Kane's agreement to allow the Debtor to the "peaceable, quiet enjoyment and possession of the Premises," cited as appearing on page 2 of the Triple Net Lease, both describe a contractual *right*, not a *procedure*.   The parties could have included in these lease agreements procedures to be followed if the Premises became untenantable. Yet, they failed to do so.

Accordingly, it is

**ORDERED** that the Motion is DENIED.


The Clerk is directed to serve a copy of this order on Thomas Ortiz.  Otherwise, service shall be by CM/ECF only.